UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREGORY FERGUSON 95-A-1149,

                              Plaintiff,                      08-CV-493S(Sr)

v.

DR. JOHN BAUERS,
DR. STEPHEN LASKOWSKI,
P.A. ROBERT MAGEE,
R.N. MELISSA COLBY, and
R.N. DEBRA HERMAN,

                              Defendants.
_____

## REPORT, RECOMMENDATION AND ORDER

        This case was referred to the undersigned by the Hon. William M. Skretny, in accordance with 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #61.

        Plaintiff, an inmate of the New York State Department of Corrections and Community Supervision ("NYSDOCCS"), filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983 based upon allegations of denial of adequate medical care at the Attica Correctional Facility ("Attica"). Dkt. #10.

        Currently before the Court is defendants' motion for summary judgment. Dkt. #57. For the reasons set forth below, it is recommended that defendants' motion be granted.

**FACTUAL BACKGROUND**

Plaintiff was assaulted by another inmate on April 27, 2005. Dkt. #36, p.2. Plaintiff was brought to the medical facilities at Attica and examined by P.A. Magee, who suspected a fracture of the zygomatic arch, *aka* cheekbone, and sent plaintiff to Wyoming Community Hospital by ambulance where an x-ray revealed a "slightly oblique fracture involving the mid portion of the left zygomatic arch with no evidence of depression." Dkt. #55-4, ¶ 5 & p.7. Plaintiff was transferred from the Wyoming Community Hospital to the Erie County Medical Center ("ECMC"), where a facial cat scan revealed a fracture of the left orbital floor, fracture of the lateral wall of the left maxillary, sinus fracture of the zygomatic arch and a fracture to the nasal bone and septum, but no intra cerebral hemorrhage. Dkt. #55-4, ¶ 7 & p.8.

Plaintiff was discharged from ECMC on May 1, 2005 with a diagnosis of dizziness and admitted to the infirmary at Attica by Dr. Bauer. Dkt. #55-2, ¶ 5. Dr. Bauer declares that because "the procedure is a non-emergent condition," plaintiff was scheduled for open reduction internal fixation of his facial fractures with a specialist and oral/maxillo-facial surgeon at ECMC on May 4, 2005. Dkt. #55-2, ¶ 6. Dr. Bauer ordered Augmentin, Lopressor, Neosporin eye drops and Motrin for plaintiff while he waited for surgery. Dkt. #55-2, ¶ 5.

Dr. Laskowski examined plaintiff during rounds on May 2, 2005, noting that plaintiff was alert and comfortable, with no complaints of distress and stable vital signs. Dkt. #55-3, ¶ 6. R.N. Herman observed that plaintiff's facial color was within

normal limits, his skin was warm and dry, his respiration was easy and regular and that plaintiff was awake, alert and ambulating with a steady and even gait. Dkt. #55-5, ¶ 4.

On May 3, 2005, R.N. Herman documented facial bruising and blood spots in the white area of plaintiff's eye and noted steady and even ambulation by plaintiff. Dkt. #55-5, ¶ 5. R.N. Herman instructed plaintiff that he was not to ingest any food or liquid that evening in preparation for surgery the next day and plaintiff expressed his understanding of these instructions. Dkt. #55-5, ¶ 5.

Plaintiff was transported to ECMC at 8:30 a.m. on May 4, 2005 where he underwent left orbit and nasal bone repair and received an implant in the orbit. Dkt. #55-2, ¶ 7 & 55-5, ¶ 6.

Plaintiff was discharged from ECMC on May 5, 2005 and admitted to the infirmary at Attica. Dkt. #55-2, ¶ 6. R.N. Colby documented that plaintiff's vital signs were stable, he was alert and oriented to time, place and year and walked with a steady gait. Dkt. #55-6, ¶ 7. R.N. Colby observed sclera blood spots in both his eyes and facial edema from the facial fracture. Dkt. #55-6, ¶ 7. R.N. Herman documented that plaintiff's facial color was within normal limits, his skin was warm and dry, his respiration easy and regular and that plaintiff was awake and alert. Dkt. #55-5, ¶ 7. R.N. Herman observed that plaintiff's nasal splints were in place and his sutures were dry and intact over the lower left eye lid. Dkt. #55-6, ¶ 7. Plaintiff denied pain or vision problems, but was running a low grade temperature and complained of a sore throat and running

nose, prompting R.N. Herman to instruct plaintiff to increase his intake of fluids. Dkt. #55-5, ¶ 7. Dr. Bauers ordered amoxicillin, tylenol No. 3, motrin and polymyxin optical ointment for plaintiff's left eye. Dkt. #55-2, ¶ 7.

On May 6, 2005, R.N. Herman documented that plaintiff's nasal splints remained in place, his lower eye lid suture line was dry and intact and that peri orbital edema remained. Dkt. #55-5, ¶ 8. Plaintiff was ambulating with a steady and even gait. Dkt. #55-5, ¶ 8.

Dr. Laskowski examined plaintiff during rounds on May 7, 2005, noting that plaintiff was alert and comfortable, moving air through his nose and reporting that his pain was well controlled. Dkt. #55-3, ¶ 8.

Plaintiff returned to ECMC for follow up of his open reduction internal fixation on May 9, 2005. Dkt. #55-5, ¶ 9. Upon his return, R.N. Herman documented that plaintiff's facial color was within normal limits, his skin was warm and dry, his respirations were easy and regular and that his sutures were dry and intact with minimal facial edema and fading discoloration. Dkt. #55-5, ¶ 10.

Plaintiff was transported to the clinic at the Wende Correctional Facility for removal of his sutures and follow up on May 11, 2005. Dkt. #55-5, ¶ 12.

Dr. Bauers discharged plaintiff from the infirmary on May 12, 2005, noting that plaintiff's left eye was healing well and that plaintiff was breathing through his nose

with no complaints of pain or difficulty. Dkt. #55-2, ¶ 8. Plaintiff was scheduled for following up at the oral-maxillo facial surgery clinic in two weeks and a referral was made to his primary care physician for follow up of possible dizziness. Dkt. #55-5, ¶ 14.

An Inmate Grievance Complaint dated May 13, 2005 and signed by plaintiff states:

> On date of April-27-2005 claimant plaintiff was taken to the Attica Correctional Facility Hospital on a stretcher for a x-ray. It was revealed and proved that plaintiff's nose was broken and left cheek bone was broken and plaintiff's left eye ball socket was broken to which was showed by the x-ray report. The medical doctors fail to follow the proper medical procedures by providing me with immediate necessary required medical treatment which was immediate emergency surgery to which plaintiff was denied of to which plaintiff received surgery on date of May-4-2005 and plaintiff's injuries became worse [sic].

Dkt. #55-7, p.13. The Inmate Grievance Complaint does not contain a signature from the grievance clerk or a grievance number. Dkt. #55-7, p.13.

At an oral/maxillo-facial consult at ECMC on May 24, 2005, Dr. Schellati documented that plaintiff had no difficulty breathing through his nose, no complaints of pain and no complaints of blurred vision. Dkt. #56, ¶ 6 & p.7. An eye examination revealed stable vision with no double vision or parastheia. Dkt. #56, ¶ 6 & p.7. Follow up was scheduled as needed. Dkt. #56, p.7.

By letters to the Inmate Grievance Office and Superintendent's Office dated May 28, 2005, plaintiff stated that he had filed an Inmate Grievance Complaint

complaining of medical malpractice on May 13, 2005, but had not received a response. Dkt. #55-7, pp.11-12.

Mark Janes, Inmate Grievance Program Supervisor at Attica, declares that grievance files and logs for calendar year 2005 were destroyed in accordance with NYSDOCCS Directive 4040, which requires that such records be maintained for the current year and preceding four years. Dkt. #55-7, ¶. However, IGP Supervisor Janes further declares that the lack of a number on the grievance attached to plaintiff's complaint suggests that the grievance was not received by the Attica Grievance Office as policy provides that any grievance received will be date stamped and signed by the Grievance clerk. Dkt. #55-7, ¶¶ 4-6. Jeffrey Hale, Assistant Director of the Inmate Grievance Program at the Central Office Review Committee ("CORC"), declares that plaintiff did not appeal a grievance to CORC in 2005. Dkt. #55-8¶ 7.

Plaintiff transferred out of Attica on July 20, 2005. Dkt. #55-2, ¶ 9.

On August 25, 2005, plaintiff complained of blurred vision and was referred by medical providers at the Southport Correctional Facility for evaluation by an opthamologist which occurred on September 16, 2005. Dkt. #56, ¶¶ 7-8. The opthamologist recommended glasses and scheduled a follow up appointment in three months. Dkt. #56, ¶ 8.

## **DISCUSSION AND ANALYSIS**

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute. The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA"), states: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In *Porter v. Nussle*, the Supreme Court held that exhaustion of administrative remedies in 1997(e) cases is mandatory[1] and should be applied broadly. 534 U.S. 516, 524 (2002). The Supreme Court reasoned that requiring inmates to follow the grievance process would ultimately "reduce the quantity and improve the quality of prisoner suits;" filter out frivolous claims; and for those cases that eventually come to court, the administrative record could potentially clarify the legal issues. *Id.* at 524-25. "Even when the prisoner seeks relief not available in grievance proceedings" – such as monetary damages – "exhaustion is a prerequisite to suit." *Id.* at 524, *citing Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532.

---

[1] Although mandatory, administrative exhaustion is an affirmative defense rather than a jurisdictional predicate. *Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999).

The PLRA requires "proper exhaustion," which "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Ruggiero v. County of Orange*, 467 F.3d 170, 175-76 (2d Cir. 2006), *quoting Woodford v. Ngo* 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."). Thus, inmates "must complete the administrative review process in accordance with applicable procedural rules - rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citation and quotation omitted).

The New York State Department of Correctional Services employs a three-step Inmate Grievance Program that requires an inmate to: (1) file a grievance with the Inmate Grievance Review Committee as set forth in 7 N.Y.C.R.R. § 701.7(a)(1); (2) appeal to the superintendent within four working days of receiving the Inmate Grievance Resolution Committee's adverse written response as set forth in 7 N.Y.C.R.R. § 701.7(b)(1); and appeal to the Central Office Review Committee in Albany, New York within four working days of receipt of the superintendent's adverse written response, as set forth in 7 N.Y.C.R.R. § 701.7(c)(1). *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004).

In assessing exhaustion of administrative remedies, the Court of Appeals for the Second Circuit has determined that

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. *Abney v. McGinnis*, 380 F.3d 663 . . . . The Court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 . . ., or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense, *Ziemba*,[2] 366 F.3d at 163. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." *Giano v. Goord*, 380 F.3d 670 . . .

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Verbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute affirmative action preventing an inmate from availing himself of Grievance procedures sufficient to invoke the doctrine of estoppel. *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir 2011).

Defendants bear the burden of demonstrating plaintiff's failure to exhaust as an administrative defense. *Lewis v. Mollette*, 752 F. Supp.2d 233, 239 (N.D.N.Y. 2010); *Livingston v. Piskor*, 215 F.R.D. 84, 86 (W.D.N.Y. 2003). As defendants destroyed the grievance files and logs for calendar year 2005, however, they cannot

---

[2] *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004).

meet their burden of demonstrating the absence of a grievance filed by plaintiff.  The fact that plaintiff's copy of his grievance lacks the signature of a clerk or a grievance number is insufficient to establish that the grievance was not filed, especially in light of plaintiff's declaration that he submitted a grievance to the grievance officer at Attica following his release from Attica's hospital on May 12, 2005 and that he provided duplicate copies of his grievance to the grievance office to forward to the Superintendent's Office and CORC when he did not receive a response to his grievance.  Dkt. ##59, p.2 & Dkt. #60, pp.4-5.  For purposes of summary judgment, plaintiff's declaration is sufficient to raise a question of fact as to whether defendants inhibited plaintiff's ability to exhaust his administrative remedies, thereby estopping them from raising the affirmative defense.  Accordingly, it is recommended that defendants' motion for summary judgment for failure to exhaust administrative remedies be denied.

**Deliberate Indifference to Serious Medical Needs**

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the United States Constitution.  429 U.S. 97, 104 (1976).  To establish an unconstitutional denial of medical care that rises to the level of an Eighth Amendment violation, a prisoner must prove, beyond mere conclusory allegations, that the defendant acted with "deliberate indifference to [his] serious medical needs."  *Estelle*, 429 U.S. at 104.  More specifically, the prisoner must demonstrate both that the alleged deprivation is, in

objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995). Both the objective and subjective components must be satisfied in order for a plaintiff to prevail on his claim. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain. *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. *Id.* The alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

Where the claim is that the care provided was inadequate, plaintiff must demonstrate that, as an objective matter, the alleged deprivation of adequate medical care was sufficiently serious, *i.e.*, that he "was actually deprived of adequate medical

care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). In making this determination, courts assess whether the inadequacy in medical care is sufficiently serious, *i.e.*, "how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280.

The subjective component for a claim of deliberate indifference to a serious medical need requires that the plaintiff establish that the defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth Amendment's cruel and unusual punishment clause. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341

F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Thus, the Supreme Court added,

> [a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 ("[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation"). Indeed,

> it is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.

*Chance*, 143 F.3d at 703. Thus, "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady" will not constitute deliberate indifference. *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000). However, "[p]rison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors." *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

Defendants have met their burden of demonstrating that plaintiff was afforded adequate medical care. P.A. Magee examined plaintiff and sent him to Wyoming Community Hospital by ambulance for x-rays; Wyoming Community Hospital transferred plaintiff to ECMC for a facial cat scan; ECMC admitted plaintiff for observation and then discharged him back to the infirmary at Attica until the date set for an open reduction internal fixation of facial fractures by a specialist and oral/maxillo-facial surgeon. Although plaintiff argues that he should have received emergency surgery immediately following the assault and should not have been transferred between Attica and ECMC on multiple occasions prior to his surgery (Dkt. #59, p.2), Dr. Bauer declares that plaintiff's medical condition was "non-emergent," and plaintiff has proffered no facts from which to infer that scheduling plaintiff for surgery with a specialist eight days after his injury caused plaintiff any harm beyond that which would be expected from his injuries. In other words, plaintiff has not raised a question of fact that the delay in surgery was sufficiently serious so as to constitute a deprivation of adequate medical care. Furthermore, there is no evidence to suggest that the defendants exhibited a reckless disregard for plaintiff's medical condition. To the contrary, defendants referred plaintiff to specialized medical care and monitored his condition in the infirmary, noting stable vital signs, easy respiration, ability to ambulate and lack of complaints of distress while plaintiff was waiting for surgery.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendants' motion for summary judgment (Dkt. #57), be granted.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988). **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning**

**objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.**

        **SO ORDERED.**

DATED:    Buffalo, New York
              August 13, 2013

                                           s/ H. Kenneth Schroeder, Jr.
                                          **H. KENNETH SCHROEDER, JR.**
                                          **United States Magistrate Judge**